OPINION
{¶ 1} Appellant, Jonathan S. Taylor, appeals the decision of the Geauga County Court of Common Pleas labeling him a sexual predator pursuant to R.C. 2950.09.
 {¶ 2} On December 9, 1991, appellant entered pleas of guilty to aggravated robbery, attempted rape, felonious assault, kidnapping, and sexual imposition, as well as the respective specifications. Appellant was sentenced to an aggregate term of 12 to 25 years. On August 23, 2001, the court conducted a sexual predator classification hearing in which appellant was labeled a sexual predator.
 {¶ 3} Appellant filed the current appeal and sets forth the following assignments of error for our consideration:
 {¶ 4} "[1.] The trial court erred to the prejudice of appellant when it adjudicated him a sexual predator thereby subjecting him to the registration and notification requirements of R.C. 2950.09, et seq., in violation of his right to privacy as protected by the 9th and14th amendments to the United States Constitution and section 1, article I of the Ohio Constitution.
 {¶ 5} "[2.] The trial court erred to the prejudice of appellant when it adjudicated him a sexual predator in violation of appellant's due process rights as guaranteed to appellant through the 14th amendment to the United States Constitution and that of the Ohio Constitution article I [sic] section 16.
 {¶ 6} "[3] The state breached its plea bargain with appellant by subjecting him to section 2950.09 et seq., where the state never reserved the right to have the contract altered violating Ohio Constitiution article II [sic] section 28, and the contract clause [sic] of the United States, clause I, article I [sic] section 10 United States Constitution.
 {¶ 7} "[4.] Appellant's psychologist violated a duty of confidentiality when they [sic] divulged confidential information where the confidential information was used to label appellant a sexual predator, thereby he was prejudiced when the breach of psychologist/patient privilege was violated. R.C. 4723.19. [sic]"
 {¶ 8} In his first assignment, appellant contends that his right to privacy, guaranteed by the Fourteenth Amendment to the United States Constitution and Section 1, Article I of the Ohio Constitution, was violated by the registration and notification requirements of R.C. 2950. Initially, we must point out that appellant failed to level an objection to the alleged violation of his rights to privacy during the hearing. It is well settled that the failure to object results in a waiver of the issue on appeal. State v. Stackhouse, 11th Dist. No. 2002-P-0057, 2003-Ohio-1980, at ¶ 19. However, even if appellant had made an appropriate objection, the Supreme Court of Ohio has considered this issue and held that R.C. 2950 does not violate a convicted sex offender's right to privacy. State v. Williams (2000), 88 Ohio St.3d 513, 526.
 {¶ 9} The right to privacy encompasses only personal information and not that information which is readily available to the public.Williams, supra, at 526; see, Russell v. Gregoire (C.A. 9, 1997),124 F.3d 1079, 1094, citing Whalen v. Roe (1977), 429 U.S. 589, 599. R.C. 2950.11(B) requires that public notice include the sex offender's name and address, the sexually oriented offense of which the offender was convicted or to which the offender pleaded guilty, and a statement that the offender has been adjudicated a sexual predator, and that, as of the date of the notice, the court has not entered a determination that the offender is no longer a sexual predator, or that the offender is a habitual offender. An individual's conviction has always been considered a matter of public record. State v. Cook (1998), 83 Ohio St.3d 404, 413. Moreover, the convicted sex offender's classification and other information are in a record required by law to be kept by a governmental agency and therefore is also subject to disclosure. See State ex rel.Milo's Beauty Supply Co. v. State Bd. of Cosmetology (1977),49 Ohio St.2d 245, 246.
 {¶ 10} However, appellant contends that R.C. 2950, "encourages wide dissemination with no effective limits on public notice about sexual predators[,]" and therefore, the law "invades his right to privacy by authorizing the wide dissemination of unwarranted information about him." Appellant's argument is problematic for two reasons: first, it assumes that the information released via R.C. 2950's reporting requirements cannot be legitimately disseminated. As discussed in the preceding paragraphs, such information is a matter of public record. Second, the fact that the government is required to actively disseminate the information collected from convicted sexual offenders, rather than merely allowing the public access, is nugatory. Active distribution, as opposed to keeping open the doors to government information is a distinction with neither difference nor meaning. Williams, supra. at 526. In sum, the information at issue is public record irrespective of the manner by which the public accesses it. Thus, R.C. 2950 does not infringe upon a convicted sex offender's right to privacy and consequently, appellant's first assignment of error is without merit.
 {¶ 11} Although appellant's second assignment of error is styled in terms of a due process violation, the substance of his argument attacks the sufficiency of the state's evidence with respect to his classification as a sexual predator.
 {¶ 12} R.C. 2950.01(E) defines a "sexual predator" as a person who has been convicted of a sexually oriented offense and is likely to engage in that type of behavior in the future. A trial court can classify a defendant as a sexual predator only if it concludes that the state has established each prong of the definition by clear and convincing evidence. See R.C. 2950.09(C)(2)(b). Clear and convincing evidence is that measure of proof which is more than a mere preponderance of evidence but less than the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which would provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cincinnati Bar Assn. v. Massengale (1991),58 Ohio St.3d 121, 122.
 {¶ 13} In assessing a defendant's likelihood for recidivism under R.C. 2950.01(E), the trial court must consider all relevant factors, including, but not limited to, each of the factors listed under R.C.2950.09(B)(3). State v. Anderson (Dec. 14, 2001), 11th Dist. No. 2000-G-2316, 2001 Ohio App. LEXIS 5644 at 6-7, citing, R.C. 2950.09(B).
 {¶ 14} A finding of likely recidivism by a trial court can be made even though a majority of the 2950.09(B)(3) factors are not relevant in a given case. State v. Fairbanks, 11th Dist. No. 2001-L-062, 2003-Ohio-700, at ¶ 14. That is, R.C. 2950.09(B) does not require a court to consider factors irrelevant to the context and circumstances of the case in question. As such, a trial court may afford greater weight to one factor over another depending on the facts of the case. State v.Wade (Dec. 29, 2000), 11th Dist. No. 99-T-0061, 2000 Ohio App. LEXIS 6218, at 7.
 {¶ 15} In the current matter, both the state and the defense created a record identifying relevant aspects of appellant's criminal and social history. Furthermore, the state offered expert testimony, by way of exhibit, through a sexual aggression assessment. The assessment discussed appellant's background information, sexual history, and treatment history. Moreover, the assessment detailed appellant's performance on various tests designed to assess his personality and risk for repeat sexual offending. With respect to appellant's likelihood for recidivism, the expert concluded from the test results that appellant is at a medium to high risk for repeat sexual offending.
 {¶ 16} Finally, the trial court considered the statutory factors listed in R.C. 2950.09(B)(3) and discussed, on the record, the particular evidence and factors upon which it relied in making its determination regarding appellant's likelihood to re-offend. In fact, the trial court considered each factor listed in R.C. 2950.09(B)(3). Although it is not immediately apparent how each particular factor militated in favor of the court's conclusion, the trial court underscored the factors on which it relied to make its determination. Specifically, the court's findings state:
 {¶ 17} "This matter came on for hearing August 23, 2001, pursuant to R.C. 2950.09(B). Upon the evidence submitted, the Court finds: * * *
 {¶ 18} "g. Defendant has not been diagnosed as having any mental illness or mental disorder. Defendant has been diagnosed as having an Antisocial Personality Disorder. (Exh. 2, Page 4).
 {¶ 19} "h. Defendant had not known the victim preceding the attempted rape and gross sexual imposition, the sexually oriented offenses for which Defendant was convicted and sentenced. Defendant used his employment to gain access to the victim's residence and gain her trust. (Exh. 1, Page 2; Exh. 3, Page 1).
 {¶ 20} "i. Defendant displayed violence and cruelty in committing his sexually oriented offenses. Defendant punched the victim in the stomach, hit her with fireplace tools, and struck her with a table. (Exh. 1, Page 2; Exh. 2, Pages 2-4).
 {¶ 21} "j. Test results indicate that Defendant is of medium-high risk of re-offending. (Exh.2, Page3). Defendant was unwilling or unable to control his violence regardless of the potential consequences. (Exh. 1, Page 4; Exh. 2, Page 3-4)."
 {¶ 22} The citations within the above quote refer to the various exhibits the court considered and the pages from which the information was retrieved. Specifically, Exhibit 1 is appellant's Pre-Sentence Investigation report (PSI); exhibit 2 is appellant's sexual aggression assessment; and exhibit 3 is the victim impact statement. It is apparent from the record that the trial court was presented with sufficient evidence to adjudicate appellant a sexual predator.
 {¶ 23} However, appellant seizes upon the fact that, prior to the conviction which prompted his sexual predator hearing, he had never been convicted of a sexually oriented offense. Appellant suggests that the sexual predator statute is not "one strike and your out." Thus, appellant concludes, merely being convicted on a single sexually oriented offense was insufficient for a conviction under R.C. 2950. Were this the only evidence the state presented, we would agree. However, as previously discussed, the trial court had a copy of appellant's PSI and his sexual aggression assessment.
 {¶ 24} The PSI provided the court with evidence of appellant's criminal and social history as well as detailed accounts of the crime from both the victim and appellant. The sexual aggression assessment provided the court with expert testimony with respect to appellant's status as an individual with a medium to high risk for re-offending. The fact that appellant had not been previously convicted of a sexually oriented offense is one of many relevant factors which the trial court considered in making its determination. Insofar as the trial court had other evidence on which it relied to make its determination, we find that its determination was based upon sufficient evidence.[1] Therefore, the appellant's second assignment of error is overruled.
 {¶ 25} In his third assignment of error, appellant contends that the state breached its plea agreement with appellant when it adjudicated him a sexual predator pursuant to R.C. 2950 insofar as the state did not reserve the right to amend the contract. As with his first assignment of error, appellant failed to object at the hearing to preserve this issue. Nevertheless, even if appellant had properly preserved this issue for review, his contention still lacks merit.
 {¶ 26} By way of background, the Supreme Court of Ohio has determined that the sex offender classification, registration, and notification requirements of R.C. 2950 do not constitute criminal punishment. State v. Cook (1998), 83 Ohio St.3d 404. A sexual predator classification hearing under R.C. 2950.09 is a civil proceeding, not a criminal trial. The statute's purpose is remedial; it addresses a current situation, viz., the likelihood that certain sex offenders present a risk of committing additional offenses, rather than punishing past conduct. Id.
 {¶ 27} Before accepting a plea, the trial court must inform a defendant of the direct consequences of a guilty plea, such as the nature of the charges, the maximum penalty, the effect of the plea, and that the defendant understands that he is waiving certain constitutional rights. See Crim.R. 11(C)(2); see, also, State v. Stewart (1977), 51 Ohio St.2d 86. However, the court is not required to inform the defendant of collateral consequences of his plea. See Brady v. United States (1970), 397 U.S. 742,755. Direct consequences are those that have a, "definite, immediate and automatic effect upon punishment." State v. Dotson (Mar. 12, 2001), 4th Dist. No. 99CA33, 2001 Ohio App. LEXIS 3148, at 9, citing Brady, supra, at 755. Insofar as the trial court's adjudication was remedial rather than punitive, his classification as a sexual predator does not bear upon his rights under the plea agreement. As such, appellant's classification as a sexual predator is a collateral consequence of his decision to plead guilty to the sexually oriented offense. Therefore, appellant's classification as a sexual predator neither directly nor indirectly affects the conditions of his plea agreement because it had no punitive effect.
 {¶ 28} Incidentally, appellant argues that R.C. 2950 runs afoul of and therefore violates his rights under the Contract Clause. In particular, the Contract Clause provides that, "[n]o state shall * * * pass any * * * law impairing the obligation of contracts." Plea agreements generally center around a defendant's pleading guilty to a lesser offense, or to only one or some of the counts in a multi-count indictment. In return, the defendant seeks to obtain concessions as to the type and length of the sentence or a reduction of the counts. Appellant entered into a plea agreement with the state on December 9, 1991 and was sentenced to 12-25 years incarceration. Because R.C. 2950 is remedial in nature and does not amend the conditions of the original agreement, the statute does not impair appellant's rights or obligations under the agreement. That is, the terms of the agreement remain in tact irrespective of appellant's classification as a sexual predator. Accordingly, appellant's third assignment of error is without merit.
 {¶ 29} In his final assignment of error appellant contends that his psychologists violated their duty of confidentiality by disclosing information used to label him a sexual predator. Similar to his first and third assignments of error, appellant failed to object and thereby failed to preserve this issue for review. However, even were this issue properly before this court, his argument must fail.
 {¶ 30} The confidential communications between a licensed psychologist and client are privileged and placed upon the same bases as those between a physician and patient. R.C. 4732.19. However, to create a privileged relationship between psychologist and client the patient must voluntarily seek the help of the psychologist. In re Smith (1982),7 Ohio App.3d 75, at paragraph two of the syllabus. If the examination is for another purpose, the privilege does not attach. Niemann v. Cooley
(1994), 93 Ohio App.3d 81, 93.
 {¶ 31} In the current matter, the state filed a motion to require appellant to undergo a psychological examination on April 19, 2001. The motion sought an order for appellant to undergo a psychological assessment and sexual aggression assessment by the Ravenwood Mental Health Center prior to his sexual predator hearing. The court granted the state's motion on April 24, 2001. Insofar as appellant was ordered to submit to the above examinations, the privilege of confidentiality never attached. Thus, the communications between appellant and the Ravenwood Mental Health Center's staff were not subject to the privilege of confidentiality.
 {¶ 32} Further, appellant maintains that the confidential communications between himself and the therapists participating in the Monticello Sex Offender Treatment Program (MSOTP) were improperly utilized by the court insofar as appellant never waived the privilege attendant to these communications. We disagree.
 {¶ 33} Although the contract defining the scope of either parties obligations is not evident or clearly set forth in the record, there is some evidence in the parties' briefs that the contract included a waiver of confidentiality regarding the dissemination of specific information.[2] As such, there is no manifest injustice from the court's use of the Monticello evaluatory documents. Thus, appellant's fourth assignment of error is without merit.
 {¶ 34} For the foregoing reasons, appellant's assignments of error are without merit and the judgment of the Geauga County Court of Common Pleas is affirmed.
Judgment affirmed.
Judith A. Christley, J., concurs.
DONALD R. FORD, P.J., concurs in judgment only with concurring opinion.
[1] In State v. Martin, 11th Dist. No. 2002-P-0078, 2003-Ohio-6410, we recently reversed the Portage County Court of Common Pleas judgment labeling the appellant a sexual predator. Our decision in Martin was grounded upon the trial court's failure to detail its analysis regarding the recidivism factors set forth under R.C. 2950.09(B)(3). Although our holding in the current matter appears to conflict with Martin, the holdings can be distinguished. To wit, in the instant case, the lower court set forth a detailed statement of its findings complete with its analysis of the R.C. 2950.09(B)(3) factors. While, in Martin, we noted, the record and judgment entry were "bereft of any substantive analysis." Id. at ¶ 12.
[2] To wit, both appellant and appellee cite the Monticello Sex Offenders Treatment Program Contract and Treatment Plan. Appellee's citation refers to paragraph 35 wherein appellant, as a member of Monticello's Plan, agreed to allow "Monticello to report to the appropriate authorities, * * * any occurrence or potential occurrence of a sexual offense on [his] part, regardless of how Staff gains knowledge of such an occurrence or potential occurrence." Thus, any offender who enrolls and participates in Monticello's Program expressly waives any confidentiality as it relates to the occurrence or potential occurrence of a sexual offense.